[No. 20501. Department Two. July 6, 1927.]

## The State of Washington, *Appellant*, v. C. W. McGonigle *et al., Respondents.*[1]

[1] Aliens (3)—Conspiracy (7)—Real Property—Statutory Restrictions—Evidence of Conspiracy—Sufficiency. A *prima facie* case of a conspiracy to violate the alien land laws, by putting agricultural land in the possession and control of an alien Japanese, is not made out by evidence to the effect that a small tract of garden land had been resided on and tilled by the Japanese, that he continued to do so after enactment of the law and to sell produce, giving receipts in the name of the owner, his alleged co-conspirator, who lived in the vicinity and was seen about the place; since it is not a violation of the alien land act to employ an alien to reside on and work agricultural land, and the circumstantial evidence of a corrupt agreement to violate the law is insufficient to make a *prima facie* case where the circumstances relied on are as consistent with innocence as with guilt.

[2] Conspiracy (5)—Criminal Law (141)—Evidence—Proof of Declarations. While a conspiracy may be shown by declarations and acts of the conspirators, where circumstantial evidence is relied on, the existence of the conspiracy should be *prima facie* established before proof is received of the acts and declarations of the individual conspirators as affecting others. than those whose acts and declarations are proved.

Appeal from a judgment of the superior court for King county, Hall, J., entered November 1, 1926, upon dismissing a prosecution for conspiracy to violate the alien land law. Affirmed.

*Ewing D. Colvin* and *James M. Bailey,* for appellant.

*Poe, Falknor, Falknor & Emory, Herbert B. Butler,* and *Marion A. Butler,* for respondents.

Holcomb, J.—This is an appeal by the state from an order and judgment dismissing a prosecution, under § 7, Laws of Extraordinary Session of 1925, p. 423. [Rem. 1927 Sup., § 2183-1.] Upon an information filed

[1]Reported in 258 Pac. 16.

May 28, 1925, charging respondents with the crime of conspiracy to violate the alien land law, respondents were adjudged guilty. Such proceedings were had in the court below, in a second trial, as resulted in the dismissal of the prosecution upon the motion of respondents, for the reason that the evidence was insufficient to sustain a conviction against either or both of the respondents.

The information charges respondents with, on or about January 1, 1924, and including May 25, 1925, unlawfully and fraudulently confederating, conspiring and combining with one another to evade and violate the provisions of ch. 50, Laws of 1921, p. 156, of this state, in that defendant Namba, being an alien, to-wit, a subject of the Empire of Japan and of the Japanese race, he desiring unlawfully to secure for himself the right to the control, possession, use, employment, issues, profits and the right to the benefits of certain lands located in King county, state of Washington (then describing eleven lots in a certain block in Hillman's Pacific City, Division No. 6, in that county), which land is agricultural land and used and capable of being used for agricultural purposes, did wilfully and unlawfully conspire, combine and confederate with the defendant McGonigle to secure the control, possession, use, enjoyment, issues, profits and rights to the benefits of the land described, the defendant McGonigle, at all times mentioned, well knowing that defendant Namba was an alien, being a subject of the Empire of Japan, and that he had not in good faith declared his intention to become a citizen of the United States.

The showing attempted to be made at the two trials of the prosecution by the state was that respondents conspired to evade or violate the alien land law by

having what amounted to some kind of a lease between them to the land in question.

The statute under which respondents were prosecuted reads as follows:

Rem. Comp. Stat, § 10582 [P. C. § 136]:

"An alien shall not own land or take or hold title thereto. No person shall take or hold land or title to land for an alien. Land now held by or for aliens in violation of the Constitution of the state is forfeited to and declared to be the property of the state. Land hereafter conveyed to or for the use of aliens in violation of the constitution or of this act shall thereby be forfeited to and become the property of the state."

Rem. Comp. Stat., § 10581 [P. C. § 135], is in part as follows:

"In this act, unless the context otherwise requires,

"(a) 'Alien' does not include an alien who has in good faith declared his intention to become a citizen of the United States, but does include all other aliens and all corporations and other organized groups of persons a majority of whose capital stock is owned or controlled by aliens or a majority of whose members are aliens;

"(b) 'Land' does not include lands containing valuable deposits of minerals, metals, iron, coal or fire clay or the necessary land for mills and machinery to be used in the development thereof and the manufacture of the products therefrom, but does include every other kind of land and every interest therein and right to the control, possession, use, enjoyment, rents, issues or profits thereof except a mortgage and except a right to the possession, use or enjoyment of land for a period of not more than ten years for a purpose for which an alien is accorded the use of land by a treaty between the United States and the country whereof he is a citizen; . . .

"(d) To 'own' means to have the legal or equitable title to or the right to any benefit of;

"(e) 'Title' includes every kind of legal or equitable title; . . .

"(j) 'Person' includes an individual, partnership, corporation or any other organized group of persons."

The statute defining conspiracy (Rem. Comp. Stat., § 2382) [P. C. § 8783], is as follows:

"Whenever two or more persons shall conspire—

"(1.) To commit a crime; or  . . .

"(7.) To accomplish any criminal or unlawful purpose, or to accomplish a purpose, not in itself criminal or unlawful, by criminal or unlawful means;

"Every such person shall be guilty of a gross misdemeanor."

It will be noted that, in the definition of "land" in the above quoted law, it is provided that land includes

" . . . every other kind of land [having previously excepted some] and every interest therein and right to the control, possession, use, enjoyment, rents, issues or profits thereof except a mortgage and except a right to the possession, use or enjoyment of land for a period of not more than ten years for a purpose for which an alien is accorded the use of land by a treaty between the United States and the country whereof he is a citizen."

It is also provided that to "own" means to have the legal or equitable title to or the right to any benefit of.

Under the conspiracy statutes, it is necessary to allege and prove that at least two persons conspired to commit a crime or to accomplish any criminal or unlawful purpose, so far as this prosecution is concerned.

Appellant attempted to substantiate the allegations of its information by introducing evidence to the effect that the land in question, a small garden tract, was agricultural land consisting of the above described lots, which are located in Algona, King county; that the legal title to the land in question stood in the name of respondent McGonigle. He purchased it from a realty company in April, 1923. Namba, an alien of

the Japanese race, had lived on the land during the ownership of McGonigle, and had lived thereon for about ten years previously. During 1924 and 1925, Namba, with his wife and family, lived on and farmed the land in question. He was undisputedly in visible possession of the residence and cultivated the land. He would be entitled to the residence, however, under and by virtue of article I of the treaty between the United States and Japan. Appellant contends that the undisputed evidence shows possession and control of the farm land by Namba. We can discover no evidence in the record to sustain that assertion or any evidence from which such factual inference can be deduced. Namba, it is true, tilled the soil and raised celery, lettuce, peas and other garden truck and farm produce. He had a horse and an auto-truck and would haul part of the produce raised on the farm to market. He would sell produce raised on the place to customers for cash. Prior to 1925, he took cash for the produce sold without giving any receipt, but, during 1925, he had given small slips as receipts, bearing the name of respondent McGonigle. McGonigle also lived in Algona and from time to time was seen on or near the land in question.

Appellant then contends that it has established that the land in question was agricultural land, used and capable of being used only for agricultural purposes, was owned by respondent McGonigle, and that Namba, an alien, was in possession and control thereof and entitled to its use, enjoyment, issues and profits, and had therefore clearly established a *prima facie* case of conspiracy to violate the alien land law; and, having established such *prima facie* case, was entitled to introduce in evidence admissions made by each of the respondents as to their relations with each other and with the land.

[1]   The one error assigned by appellant in its brief is the ruling of the trial court dismissing the case because of the insufficiency of the evidence introduced by appellant; but, as subsidiary thereto, it elaborately argues the question of the consideration of the proofs as to several admissions or declarations made by each of the parties, individually, and not in the presence of the other.   These alleged admissions or declarations of each of the respondents to strangers were received by the trial court regardless of the order of proof, and without any promise on the part of the prosecution to make a *prima facie* case of conspiracy against respondents independent of the admissions or declarations introduced.

It is true, there need be no evidence of a formally expressed agreement between the alleged conspirators. Conspiracies are seldom susceptible to such proof. But if there is evidence, circumstantial even, of a meeting of the minds and unity of design and of co-operative conduct which could only mean that there was such an agreement, that would be sufficient foundation for the admission of evidence of subsequent independent acts and declarations of each of the parties as against any one of them.   *State v. Wappenstein,* 67 Wash. 502, 121 Pac. 989; *Spies v. People,* 122 Ill. 1, 12 N. E. 865, 17 N. E. 898, 3 Am. St. 320; 1 Greenleaf on Evidence, § 111; *Card v. State,* 109 Ind. 415, 9 N. E. 591; *McKee v. State,* 111 Ind. 378, 12 N. E. 510.

It is well established that, where several have united together for an illegal purpose, any act done by one of them, or any of them, in prosecution of that common purpose or design is, in the eye of the law, the act of all, and evidence of such act is admissible against all or any of them.   The same is true as to individual declarations touching the common design.  *State v. Wappenstein, supra.*

Now, under this information, in order to make a *prima facie* case against respondents, it was incumbent upon appellant to prove, circumstantially or otherwise, a violation of the alien land law by means of a corrupt agreement to evade the same by permitting the alien respondent to have an interest in the land and the right to its control, possession, use, enjoyment, rents, issues or profits, except the residential use.

As was said by the trial court, and is certainly a correct principle of law, it is not a violation of the alien land act for the owner of land to hire alien Japanese to work upon it, or to manage or have all the powers in the management that are usually exercised by superintendents or managers of farm land. As was also said by the trial court, when circumstantial evidence is relied upon entirely, the circumstances relied upon for conviction must be consistent with each other and inconsistent with innocence. The trial judge then stated that, under that rule and under the law, in his opinion, the circumstances established were as consistent with innocence as with guilt.

Another well settled rule of law is that which was approved in the *Wappenstein* case, *supra,* and *Spies v. People, supra:*

" 'The proof of conspiracy which will authorize the introduction of evidence as to the acts and declarations of the co-conspirators may be such proof only as is sufficient, in the opinion of the trial judge, to establish *prima facie* the fact of conspiracy between the parties, or proper to be laid before the jury, as *tending* to establish such fact.' "

Here, the trial judge was of the opinion that the evidence *aliunde* to prove the fact of conspiracy between these respondents was not sufficient to *prima facie* establish the conspiracy.

"The rule requiring some proof of a conspiracy in order to render the acts and declarations of a co-conspirator admissible is reasonable; and while its purpose is to protect the accused against the admissibility of improper proofs, yet it is not intended to operate to the prejudice of the due administration of justice. The rule is not carried to the extent of holding that the conspiracy must be established beyond a reasonable doubt, or even to the satisfaction of the jury. The rule requires no more than proof sufficient to establish, in the opinion of the trial judge, a *prima facie* case on the proposition of the existence of the conspiracy. And when, in the sound discretion of the trial judge, he is satisfied that a sufficient *prima facie* case of the conspiracy has been made, he then admits the evidence of the acts and declarations of any one of the co-conspirators against the other. This rule has been thus stated: 'If the evidence already offered *aliunde* in proof of the conspiracy, or tending to prove it, is sufficient, in the opinion of the presiding judge, to authorize the jury to find in favor of the fact of its existence, this makes out a *prima facie* case and lets in the declarations made by any co-conspirator during the pendency of the enterprise and in furtherance of its objects.' This *prima facie* case is not required to be established by positive or direct evidence, but may be made to appear by proof of circumstances from which it may be inferred. And the rule in some jurisdictions is that where there is any evidence at all supporting the decision of conspiracy the judgment will not be reversed." 4 Elliott on Evidence, § 2941.

The same authority (§ 2942) states that no definite rule can be given as to what will constitute a sufficient *prima facie* case in order to render admissible the acts and declarations of a co-conspirator. While the admissibility of such evidence is for the trial court, his decision on such question is subject to review, and an appellate court may reverse the judgment where it appears that such proof was admitted when a *prima facie* case had not been established. See, also, *State v. Walker,* 124 Iowa, 414, 100 N. W. 354.

In the above cited case, the trial judge admitted proof of acts and declarations of alleged joint conspirators before a *prima facie* case of conspiracy had been made and without any promise on the part of the state to introduce such *prima facie* evidence. The supreme court reversed the judgment of conviction, saying that

" . . . the evidence tending to show a conspiracy must be outside of and in addition to the declarations of the co-conspirators whose declarations are sought to be introduced."

After an examination of all the evidence in the record, we are forced to agree with the trial court that there was no competent evidence in the record tending to show a conspiracy between respondents to give over to the alien respondent any interest in the land described in the information and the right to the control, possession, use, enjoyment, rents, issues and profits thereof.

[2] We are impressed that what appellant really is trying to do is to show the conspiracy by the alleged admissions and declarations of respondents, individually, with reference to their relations and the land. Some authorities are cited to the effect that "a conspiracy may be proven by showing the declarations, acts and conduct of the conspirators." *State v. Ryan,* 47 Ore. 338, 82 Pac. 703; *State v. Thompson,* 69 Conn. 720, 38 Atl. 868; *Patch Mfg. Co. v. Protection Lodge No. 215, International Ass'n of Machinists,* 77 Vt. 294, 60 Atl. 74, 107 Am. St. 765; *People v. Cockrill,* 62 Cal. App. 22, 216 Pac. 78.

In the first case above cited, in an opinion written by the late and eminent Judge Wolverton, when he was on the supreme court of Oregon, the above statement was made; but it will be observed that the statement includes not only the declarations, but also *acts*

*and conduct of the conspirators.* In that case, also, there was a clear showing of a corrupt agreement, between the defendant on trial and another, to defraud the prosecuting witness. There was evidence in the case of concerted action on the part of both of the conspirators tending to show a corrupt agreement between them to defraud the prosecuting witness, regardless of the declarations made by one of the co-conspirators, not on trial, to a stranger. The declarations were, therefore, clearly admissible.

In the *Thompson* case, *supra,* it was first said that

"The joint participation of all the persons charged, in the acts by which the common purpose is to be accomplished, may be shown by direct evidence. The combination may be established by proof of the admissions of each of the accused conspirators, who are parties to the action, made either during or after the accomplishment of the common purpose, proof of each admission being received in evidence only against the person making it. It may be proved by circumstantial evidence, by proof of the separate acts of the individuals, and of circumstances from which the illegal confederation may be inferred. From the nature of the offense itself, such corrupt agreement of the parties, entered into in secret, can only in exceptional cases be established in any other manner. . . . *It is undoubtedly the rule that evidence which, in the opinion of the court, is sufficient to establish prima facie the existence of the conspiracy, should be first presented before proof is received of the acts and declarations of the individual conspirators as affecting others than those whose acts and declarations are proved.*" (Italics ours.)

To the same effect is the Vermont case above cited.

The recent *Cockrill* case above cited, decided by the district court of appeals of California, and affirmed by the supreme court of California by denying a hearing in that court, was a prosecution on an indictment for violating the alien land law of California for-

bidding conspiracy to effect a transfer of real property. The prosecution showed that the alien furnished the money and the other conspirator took title to the land in trust for the alien. A statutory presumption of evidence was relied upon to sustain the trust theory, which provides that a *prima facie* presumption of the attempt to evade escheat arises when the property is taken in the name of one person and the consideration is paid by an alien. Manifestly, in the above case, there was a *prima facie* case made by the prosecution, aided by the statutory presumption of conspiracy to evade the escheat of the land under the law by the transaction involved; and, therefore, admissions or declarations made by one of the conspirators before the grand jury, relating to the transaction involved, were admissible.

We have examined a great number of authorities upon the questions involved in this case, both those cited by the parties and others. We have carefully considered the record and the law, and are convinced that we cannot disturb the discretion of the trial judge in holding that a *prima facie* case had not been made by the appellant as to a conspiracy and that the declarations or admissions of respondents, individually, could not be received to establish a conspiracy alone.

The judgment is therefore affirmed.

Mackintosh, C. J., Askren, Tolman, and Main, JJ., concur.