[No. 11434-4-I.   Division One.   August 22, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. CHRIS MILLER, *Appellant.*

*Chris Miller,* pro se, and *Richard C. Kimberly,* for appellant (appointed counsel for appeal).

*David S. McEachran, Prosecuting Attorney,* for respondent.

WILLIAMS, J.—After a trial to the court, sitting with a jury, Chris Miller was convicted of conspiracy to commit first degree murder and attempted first degree murder. His appeal from the judgment entered on the verdicts raises questions about the trial court's rulings admitting testimony concerning statements made by Miller's alleged coconspirators and instructions on the law of conspiracy. We affirm.

The facts concerning the attempted murder are that on the morning of March 16, 1981, Miller and Gene Moreau waylaid Dr. John Spry while he was driving to work in Whatcom County. The two men attacked Spry by driving alongside his truck in Moreau's automobile and firing at him with a shotgun, striking him in the head.

The facts concerning the conspiracy to commit the murder are that in December of 1979, Moreau and his wife, Shirley (Spry's ex–wife), traveled to Whatcom County from their home in Montana to enable Shirley's children to visit Spry, their father. While the children were with their father, the Moreaus stayed at the home of a friend, Bonnie Goodwin. The Moreaus talked repeatedly with Goodwin of their dislike for Spry (who was engaged in constant child

custody battles with Shirley) and their desire to have him killed, preferably by a hired killer who could ambush him on his way to work. The Moreaus repeated statements of this sort to Goodwin in several telephone conversations taking place between January 1980 and March 1981.

On the evening of March 15, 1981, Goodwin inadvertently met Gene Moreau and another man, a stranger, at a cafe in Blaine. Moreau told her that he had come from Montana to attend to some unfinished business with Spry. He said that the stranger (Miller) was with him for that purpose. The next morning the attempted murder occurred.

The first question is whether the trial court erred by admitting into evidence Goodwin's testimony concerning the statements made by the Moreaus in December 1979, while visiting her home, regarding their plans to have Spry killed. Miller contends that the testimony was inadmissible hearsay.

■ Goodwin's testimony regarding the Moreaus' statements was not hearsay because it was admitted to prove their "verbal acts" in forming the conspiracy.

> In considering this question, we treat testimony by witnesses about statements made by [the alleged conspirators] themselves as part of the independent evidence of their participation in the conspiracy. *Such statements by them are not received to establish the truth of what they said, but to show their own verbal acts.* A conspiracy is an agreement or understanding, express or implied, between the conspirators. The usual way in which people reach agreements or understandings is by the use of words, oral or written. Indeed, it is difficult to conceive of a conspiracy formed or carried forward without the use of any words.

(Footnote omitted. Italics ours.) *United States v. Calaway,* 524 F.2d 609, 613 (9th Cir. 1975), *cert. denied,* 424 U.S. 967 (1976). The statements were admissible to show the Moreaus' involvement in the formation of the conspiracy. *United States v. Brooklier,* 685 F.2d 1208, 1219 (9th Cir. 1982), *cert. denied,* __ U.S. __, 103 S. Ct. 1195 (1983); *United States v. Kutas,* 542 F.2d 527, 528 (9th Cir. 1976),

*cert. denied,* 429 U.S. 1073 (1977). The hearsay rule does not apply.

> The . . . argument is that [the witness'] testimony about what was said at the meetings by [the alleged conspirators] was hearsay, and should not have been admitted until independent evidence of the conspiracy was produced, and that such independent evidence was never produced. However, the hearsay argument is not applicable here. Rule 801(c), F.R. Evid., defines hearsay as "a statement . . . offered in evidence to prove the truth of the matter asserted." But when a witness is present at a meeting between a group of conspirators, and they orally, in his presence, agree upon the conspiracy, its objectives, and its *modus operandi,* the witness' testimony about what each of them said is not hearsay. It is not offered to prove that what the conspirators said is true, but to prove their verbal acts in saying it. This does not violate the hearsay rule.

*United States v. Wolfson,* 634 F.2d 1217, 1219 (9th Cir. 1980).

The next question is whether the trial court erred by admitting Goodwin's testimony regarding similar inculpatory statements made by the Moreaus over the telephone in January 1980 and later and by Gene in the Blaine cafe. Miller again claims that this testimony was inadmissible hearsay. The trial court ruled that the testimony was admissible pursuant to the coconspirator exception to the hearsay rule, ER 801(d)(2)(v), which provides:

> A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a co–conspirator of a party during the course and in furtherance of the conspiracy.

██ Statements of a coconspirator are admissible after the State has established a prima facie case, made out by evidence independent of the hearsay, that the conspiracy existed at the time the statements were made. *State v. McGonigle,* 144 Wash. 252, 258 P. 16 (1927); *State v. Wappenstein,* 67 Wash. 502, 121 P. 989 (1912). This evidence must establish the connection of both the declarant and the defendant to the conspiracy. *United States v. Snow,* 521

F.2d 730, 733 (9th Cir. 1975), *cert. denied,* 423 U.S. 1090 (1976).

Goodwin's testimony regarding statements made by the Moreaus after December 1979 was received into evidence after both her testimony regarding their December 1979 statements and evidence of Gene Moreau's testimony at an earlier separate trial which established Miller as the person firing at Spry. The trial court correctly ruled that a prima facie case establishing the existence of a conspiracy, of which Miller was a member, had been made out by this time, *State v. McGonigle, supra; State v. Wappenstein, supra,* and properly admitted the testimony pursuant to ER 801(d)(2)(v).

The next question is whether the testimony of Dave Fuller, Gene Moreau's work supervisor in Montana, was properly admitted over Miller's hearsay objection. Fuller testified that on the morning Spry was shot Shirley Moreau telephoned him to say that Gene was ill and would not be at work that day. Because the statement was not offered for the truth of what it asserted (that Gene was ill) but, rather, was offered to prove Shirley's continuing involvement in the conspiracy, it was not hearsay and was properly admitted. ER 801(c).

■ The next question is whether the trial court erred by ruling that the Moreaus' acquittal on the same conspiracy charges at the earlier trial did not bar use of their statements against Miller.[1] The majority of federal courts have concluded that an acquittal has no bearing on the admissibility of a coconspirator's statements made in furtherance of a conspiracy because an acquittal establishes only that the government did not prove guilt beyond a reasonable doubt, while evidentiary requirements are satisfied if the government makes out a prima facie case. *See, e.g., United States v. Gil,* 604 F.2d 546 (7th Cir. 1979); *United States v. Stanchich,* 550 F.2d 1294 (2d Cir. 1977); *United States v.*

---

[1] At this trial, Gene and Shirley Moreau were acquitted of conspiracy to commit murder; Gene Moreau was convicted of attempted first degree murder.

*Cravero,* 545 F.2d 406 (5th Cir. 1976), *cert. denied,* 430 U.S. 983 (1977). This reasoning is persuasive; the trial court's ruling is upheld.

■ The final question is whether the jury was correctly instructed on the law of conspiracy. The instructions given were amply supported by legal authority, *State v. McGonigle, supra; State v. Wappenstein, supra;* WPIC 110.01, 11 Wash. Prac. 442 (1977); WPIC 110.02, 11 Wash. Prac. 443 (1977), and allowed Miller to fully argue his theory of the case. *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968). There was no error.

■ The numerous concerns presented by Miller in his pro se brief are either encompassed in our foregoing rulings, are not supported by citation of authority and do not otherwise appear to be well taken on their face, *State v. Young,* 89 Wn.2d 613, 625, 574 P.2d 1171, *cert. denied,* 439 U.S. 870 (1978), request us to retry factual issues which we cannot do, *State v. Snider,* 70 Wn.2d 326, 327, 422 P.2d 816 (1967), or are otherwise patently without merit. *State v. Mercer,* 34 Wn. App. 654, 662, 663 P.2d 857 (1983).

Affirmed.

RINGOLD and CORBETT, JJ., concur.

Reconsideration denied September 29, 1983.

Review denied by Supreme Court December 16, 1983.