[No. 11799-8-I.   Division One.   January 23, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. GARY
E. CULVER, *Appellant.*

*Anthony Savage,* for appellant.

*Norm Maleng, Prosecuting Attorney, Patrick Sainsbury, Chief Deputy,* and *Andrew R. Hamilton, Assistant United States Attorney,* for respondent.

CORBETT, J.—Defendant, Gary E. Culver, appeals his judgment and sentence entered on a jury verdict of guilty to first degree theft.

The testimony at the trial indicated that during the fall of 1978, William Bossen, John T. Jones, and Michael B. Kavanaugh engaged in a scheme of passing counterfeit cashier's checks to purchase various items of personalty. Testimony also indicated that between January 1 and January 20, 1979, money was obtained by deception through the sale of real estate by Bossen, who was then using another name. In the course of this scheme real estate documents were forged and perjury committed.

The State's theory of prosecution was that Culver, together with the other defendants, conspired to commit the crime of theft in the first degree between October 10, 1978 and January 31, 1979. The State alleged that in the course of the conspiracy Culver and the other defendants obtained a cashier's check from Hometel, Inc., by way of a fraudulent sale of land to that corporation by Bossen, who posed as the true owner. In return, Bossen received from Hometel a check for over $39,000 and the title to a 1935 Rolls Royce automobile. The State alleged that Culver and others accomplished the sale by forging real estate documents and then forging the name of the true owner, Gambold, to the Hometel check and cashing it at Rainier Bank.

Bossen testified that on Friday, January 19, 1979, he, Jones, and Kavanaugh went to Culver's office with the check for the purpose of cashing it. When they got there, Culver called his bank and said he was sending down a

customer who owed him some money to cash a check. Culver asked the bank to cash it and hold out $10,000 for him. Culver then told Bossen to go downstairs to the bank and ask for a certain woman. Bossen testified that when he asked Culver what would happen if he was caught, Culver replied, "Don't worry about it. We'll take care of it." Bossen proceeded to the bank, where he forged the name of Gambold on the check and received $29,000 in cash, and a $10,000 cashier's check made out to Master Mortgage, Culver's company. Bossen gave the cashier's check to Culver. Bossen, Jones, and Kavanaugh then left and split up the money. Bossen testified that at all times Culver knew who he was and what was going on.

Culver testified in his own defense. He denied participating in any conspiracy and denied knowingly helping Jones or Bossen or anyone else in the Gambold–Hometel deception. He stated that while he was in his office on January 15, 1979, he was contacted by telephone by Mr. Gambold, who wanted to purchase some property from him. On January 19, Bossen, posing as Gambold, came to Culver's office and bargained to purchase the property. The option price was $10,000. When Bossen produced a cashier's check of nearly $40,000 to pay for the option, Culver took the check to his bank to verify its authenticity. He then sent Bossen to the bank, which cashed the check and issued the $10,000 cashier's check to Master Mortgage. Culver denied that Jones was in his office when he received the $10,000 check.

On the question of who was present in Culver's office on January 19, the State called a latent fingerprint examiner for the King County Department of Public Safety. She testified that the cashier's check from "John Gambold" to Master Mortgage bore the fingerprints of the defendant Jones. Mr. Heintz, a real estate entrepreneur who shared office space with Culver, testified on behalf of Culver that he remembered Bossen, who was then posing as Gambold, coming into the office on the day that the Hometel check was negotiated. Heintz testified that Bossen was not in the company of Jones or Kavanaugh, both of whom were

known to him.

The State charged Culver, Jones, Kavanaugh, and Kenneth Brougham with 18 counts of criminal conspiracy, first degree theft, forgery, and second degree perjury, arising out of the various transactions that occurred between October 1978 and January 1979. Brougham was never arrested and did not go to trial. Jones fled the jurisdiction prior to trial and was tried in absentia. The jury found Culver guilty of first degree theft, and not guilty on the remaining counts charging criminal conspiracy, forgery, and perjury.

■ Culver first contends that the jury's verdict of guilty as to first degree theft is inconsistent with its verdict of not guilty on criminal conspiracy and forgery. If two offenses are composed of different elements and proof of each count is not the same, acquittal on one count is not inconsistent with conviction on the other. *State v. Fairfax*, 42 Wn.2d 777, 781, 258 P.2d 1212 (1953). Conviction of conspiracy requires proof of an agreement. Conviction of theft requires proof of the completed crime. Conviction of forgery requires knowledge of the forgery. These elements of proof are not common to the three crimes. On the other hand, if two offenses arising out of the same transaction are charged in separate counts and one offense includes elements or acts necessary to the commission of the other, the jury verdicts are inconsistent if the jury convicts on one and acquits on the other. *State v. O'Neil*, 24 Wn.2d 802, 809, 167 P.2d 471 (1946). Culver argues that the theft charged as a separate count is the "substantial step" element of conspiracy, as charged in count 1, and thus proof of the two counts was necessarily the same.

The additional element of agreement was necessary to support the conspiracy count. The jury could have disbelieved the evidence of agreement while accepting the evidence of theft. Similarly, conviction on the forgery count required proof that Culver knew that the man who came to his office was not John Gambold. This did not prevent the jury from finding that Culver knowingly aided in the theft by helping the person he believed to be Gambold acquire

proceeds from the sale of property he didn't own. Where there is a factual basis upon which the jury could have acquitted on one charge and convicted on the other, there is no inconsistency. *State v. Hawkins,* 70 Wn.2d 697, 714, 425 P.2d 390 (1967), *cert. denied,* 390 U.S. 912 (1968). Because the elements of proof were not common to the three crimes, the jury verdicts are not inconsistent.

Culver next contends that the trial court erred in admitting, over objection, statements allegedly made by Jones and Kavanaugh which inculpated Culver. The trial court admitted the statements both as statements of a coconspirator and as statements against penal interest. Because we find the statements were properly admitted as those of a coconspirator, we do not address whether they were against penal interest.

Declarations and acts of coconspirators are inadmissible until a prima facie case of conspiracy has been established. *State v. Miller,* 35 Wn. App. 567, 570, 668 P.2d 606 (1983). The determination of whether a prima facie case exists is for the trial court in the exercise of its discretion. *State v. Langworthy,* 20 Wn. App. 822, 836, 583 P.2d 1231 (1978), *rev'd on other grounds,* 92 Wn.2d 148, 594 P.2d 908 (1979). The crime of conspiracy is seldom susceptible of direct and positive evidence and may properly be proved by circumstantial evidence. *Sears v. International Bhd. of Teamsters Local 524,* 8 Wn.2d 447, 452, 112 P.2d 850 (1941). Thus, the proof required to justify admission is that which, in the opinion of the trial court, establishes or *tends* to establish the fact of the conspiracy. *State v. McGonigle,* 144 Wash. 252, 258, 258 P. 16 (1927).

The trial judge found the basic foundational facts tending to prove the conspiracy. He placed particular stress on the requirement that the statement be in furtherance of the conspiracy. Beyond this determination by the trial court, it was for the jury to assess the credibility and weight to be given to the evidence. The trial court did not abuse its discretion in making this determination.

Finally, Culver contends that he is entitled to a new trial

on the theft conviction because of his acquittal on the conspiracy count. He claims substantial prejudice from the evidence admitted to prove the conspiracy.

■ The trial court concluded that joinder of each count and each defendant was proper under CrR 4.3. No error is assigned to the denial of Culver's motion to sever. Culver relies upon *United States v. Branker,* 395 F.2d 881, 887–89 (2d Cir. 1968), *cert. denied,* 393 U.S. 1029 (1969) and *United States v. Donaway,* 447 F.2d 940, 943 (9th Cir. 1971), cases in which a conspiracy count, dismissed at the end of the State's case, was used to justify joinder of multiple defendants whose connection with each other was tenuous.

In *Branker,* eight defendants were tried under 81 counts drawn from two indictments consolidated for trial. At the close of the government's case, the trial judge dismissed the conspiracy count. Fewer than 150 pages of a 7,000–page trial transcript related to four of the appellants. 395 F.2d at 888. Likewise, in *Donaway,* a mere 50 pages out of a 2,300–page record were relevant to the appellant. 447 F.2d at 943. On those facts, the respective courts found it more than likely that the appellants were severely prejudiced by evidence relevant only to codefendants, and that the failure to sever was an abuse of discretion. The record in the instant case, although voluminous, does not reveal the kind of imbalance present in *Branker* and *Donaway.* There is testimony throughout tending to link Culver to the conspiracy. The court's instructions, which the jury is presumed to follow, *State v. Kroll,* 87 Wn.2d 829, 835, 558 P.2d 173 (1976), informed the jury that it must decide the case of each defendant on each crime charged as if it were a separate trial. The jury was also instructed that acts or statements of a participant in the conspiracy cannot be considered against a particular defendant without first finding the defendant to have been a member of the conspiracy. It is apparent by reason of the acquittal on the conspiracy charge that the jury did not give weight to the statements at issue. Since none of these statements related to the theft

of the Hometel check, Culver has failed to demonstrate actual prejudice by reason of their admission. He is not entitled to a new trial.

Affirmed.

DURHAM, C.J., and RINGOLD, J., concur.

Reconsideration denied July 26, 1984.

Review by Supreme Court pending October 1, 1984.