IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 85017-2-I |
| MICHAEL BERGMAN, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

COBURN, J. — In this personal restraint petition (PRP), inmate Michael Bergman contends that the Department of Corrections (DOC) violated his right to due process because it did not provide him a copy of a related incident report until his prison disciplinary hearing. He also argues that the evidence is insufficient to support the finding that he introduced narcotics into the prison. Because the substance of the initial incident report was included in the written notice of infraction that was served on Bergman more than 24 hours prior to the hearing, he received both advance notice of the alleged violation and a written statement of the evidence relied upon and reasons for the disciplinary action. Bergman fails to establish a basis for relief. We deny his petition.

FACTS

On December 1, 2022, DOC notified prison inmate Bergman that he was charged with the serious infraction of "[i]ntroducing or transferring any unauthorized

drug or drug paraphernalia" in violation of rule 603 under Former WAC 137-25-030 (2019).[1]  He was given the initial serious infraction report and the disciplinary hearing notice.  The "narrative" section of the infraction report describes an investigation that concluded on November 30, wherein DOC officers determined from monitored prison phone calls and mail room intercepts that Bergman asked a person outside of the prison to introduce narcotics to the corrections facility via mail.  Included in the narrative is the following section describing the testimony and actions of DOC officer Thomas Smith:

> On 11/18/22 at 1125 Smith, Thomas from the mailroom notified [DOC investigations] that while he was processing the mail, he intercepted two incoming suspicious greeting cards addressed to [inmate] Bergman, Mike [DOC identification number], with two different returned address [sic].  Smith stated that the first greeting card was from a Becky Cox, [address in Redding, CA] and the Second greeting card was from a Laurie, Spinner [address in Redding, CA].  Smith stated that both greeting cards were layered and when he went to remove the greeting card of the envelope a small orange strip fell out of the . . .  card that was glued shut at the layered area.  Investigator Mead made contact with Mailroom staff and retrieved the two envelopes . . . .

Smith wrote the initial incident report, which was not provided to Bergman prior to his hearing.  The incident report stated:

> On 11-18-22 while processing incoming mail, I opened a greeting card from Becky Cox addressed to Bergman Mike [DOC identification number]. The greeting card was layered and when I removed the card from the envelope small orange strips fell out of the layered section of the card. The yellow strips resemble suboxine [sic] strips.  I then looked to see if this offender had anymore [sic] mail.  I located another envelope addressed to the same [inmate] from a different sender (Laurie Spinner)[.] Upon opening the card I found it also to be layered.  The card was actually glued shut at the layered area.  After inspecting the card I was able to see into the layered area.  This card also contained small yellow strips.

> [DOC investigations] was notified and the cards were secured as evidence.

---

[1] This provision was amended in 2023 to included "possessing," in addition to "introducing or transferring."  Wash. St. Reg. 23-22-112 (effective Dec. 1, 2023).

The infraction report narrative also named and described the investigation work of two others in addition to Smith, and included details of Bergman's monitored jail phone calls. The report stated that an inspection confirmed the cards that had been glued shut had a total of 30 strips and five sheets of paper divided between them. A test of a small piece of one of the strips showed a presumptive positive for the drug Suboxone. The sheets of paper tested negative for the narcotics methamphetamine and spice.[2] Bergman on November 12 made a call to someone he called "Dad" to request that he send Bergman a couple of cards, like a Thanksgiving card that "you can cut open and seal it back up." The person responded "I got you." In another call to the same number on November 26, the person asks if Bergman got the mail and Bergman responded, "No not yet . . . you got to be careful what you say on this thing."

Bergman was notified that he may call witnesses and present documentary evidence as well as propose questions for the hearing officer to ask witnesses. He elected to do neither.

Bergman's hearing was held on December 8, 2022. The hearing officer read aloud verbatim the infraction report and the incident report, as well as reviewed the photographs of the cards, the found strips and the test ampule showing the presumptive positive result for suboxone.

Bergman stated at the hearing that he did not have a copy of Smith's incident report. The hearing officer arranged to immediately provide Bergman a copy. Bergman then stated that the person he spoke with on the phone was his father who had recently gotten out of prison in California but that he now lived in Washington. He noted that the

---

[2] "Spice" goes undefined in the DOC documents, but is typically a slang term for a range of synthetic cannabinoids (drugs designed to mimic the effects of cannabis).

cards were from California and denied knowing the people who sent them. He explained that his intent was to obtain some "porn," not drugs. The hearing officer stated that he was "convinced based on the evidence as well as the testimony and your own testimony that an introduction of drugs was attempted and foiled at the mailroom." The hearing officer found Bergman guilty resulting in a loss of good-time credits, imposed cell confinement time as well as other sanctions.

Bergman filed an administrative appeal. The hearing decision was affirmed by a DOC associate superintendent.

Bergman then filed this PRP.

## DISCUSSION

In order to prevail on a PRP, Bergman must establish (1) that he is currently being restrained, and (2) that the restraint is unlawful. RAP 16.4. "A prisoner's statutory right to earn good time credits is a 'protected liberty interest in those credits which prevents their deprivation absent observation of minimum due process requirements.'" In re Pers. Restraint of Gronquist, 138 Wn.2d 388, 397, 978 P.2d 1083 (1999) (quoting In re Pers. Restraint of Johnston, 109 Wn.2d 493, 497, 745 P.2d 864 (1987)). It is undisputed that Bergman is under restraint as a result of the serious infraction decision at issue here, as he lost 75 days of good time credits. See In re Pers. Restraint of Malik, 152 Wn. App. 213, 218, 215 P.3d 209 (2009).

As a general rule, we will hold the restraint illegal and give petitioners relief only if they can prove actual and substantial prejudice as a result of constitutional error, or if they can prove nonconstitutional error that inherently results in a "complete miscarriage of justice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 813, 792 P.2d 506 (1990).

However, where no prior judicial review has been afforded to a petitioner as in cases of administrative prison discipline, the heightened threshold of a "prima facie showing" of error and prejudice or total miscarriage is not required.  In re Pers. Restraint of Grantham, 168 Wn.2d 204, 214, 227 P.3d 285 (2010).  Bergman's hearing was reviewed by a DOC assistant superintendent.  He has had no prior judicial review of this hearing.  Therefore, we "reverse a prison discipline decision only upon a showing that it was so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding so as to work to the offender's prejudice."  Grantham, 168 Wn.2d at 215.

### Due Process

Bergman argues that he was not able to prepare a defense because he was not provided Smith's incident report before the disciplinary hearing.

A prisoner enjoys more limited due process rights than a criminal defendant.  In re Pers. Restraint of Reismiller, 101 Wn.2d 291, 296-97, 678 P.2d 323 (1984).  Due process requires that an inmate facing a prison disciplinary hearing: "(1) receive notice of the alleged violation; (2) be provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals; and (3) receive a written statement of the evidence relied upon and the reasons for the disciplinary action."  Gronquist, 138 Wn.2d at 396-97.  Consistent with this due process requirements, the Washington administrative code provides the right of an offender to receive "[w]ritten notice of the alleged violation(s) and a summary of the supporting evidence at least 24 hours before the hearing."  WAC 137-28-285(1)(b).

There is no dispute that Bergman received the infraction report on December 1, which as required by the administrative code and Gronquist provided Bergman with

5

"notice of the alleged violation . . . and . . . a written statement of the evidence relied upon and the reasons for the disciplinary action." 138 Wn.2d at 396-97.

Bergman contends that he could have prepared his defense differently if he had also been provided Smith's incident report because he could have proposed specific questions to Smith. His argument is based on an unsupported assertion that the infraction report "described the evidence as consisting of only photos and phone calls recordings." Bergman points to the fact the infraction report states "Description of evidence: Photos, Phone call retain in IIU for review" and did not attach any related reports such as Smith's incident report. Bergman also notes that a DOC internal infraction review checklist sheet marked "N/A" where it states "Ensure the report includes supporting documentation if the incident included . . . DOC 21-917 Incident Report." The Smith incident report is identified as a "DOC 21-917" form.

Bergman was not given the internal checklist. Even if DOC was supposed to attach the incident report to the infraction report, the substance of the incident report was included in the infraction report. The majority of the infraction report is the narrative that summarizes the investigation. We are unpersuaded that by listing photos and phone call under a "Description of Evidence" conveyed to Bergman that *the only* evidence DOC was going to rely on at the hearing were photos and a phone call and none of the information included in the narrative.

Bergman cites for support Wolff v. McDonnell, 418 U.S. 539, 564, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). The Wolff Court criticized a Nebraska Corrections policy that permitted, in certain circumstances, first notice to be given an inmate of the charges against them when the charges were orally read to the inmate at their infraction hearing.

418 U.S. at 564. That procedure is nothing like what occurred here. WAC 137-28-285(1)(b) provides that an offender receives a written notice of the alleged violation and a *summary* of supporting evidence at least 24 hours before the hearing. The infraction report given to Bergman satisfies that requirement. Nothing prohibited Bergman from preparing questions for Smith prior to the hearing.

Bergman next asserts that the lack of an attached witness statement from Smith makes his case analogous to Malik. 152 Wn. App. at 213. But the inmate in Malik was prejudiced by the application of confidential information that DOC withheld and which, crucially, he was never provided with a summary of prior to his hearing. Id. at 221 ("No summary of any confidential information appears in the record."). The hearing officer in Malik issued a ruling based on previously-unannounced "confidential information" introduced at the hearing that she verbally declared was "credible and reliable," but this information was never provided to the inmate in post-hearing documents, was not seen in the administrative review of the inmate's case, and DOC could provide no satisfactory explanation as to what this information was on review. Id. at 221-22. In the instant case, Bergman's hearing officer read aloud verbatim the narrative of the infraction report, which was provided to Bergman more than 24 hours before the hearing. Then the hearing officer also read aloud verbatim Smith's incident report, the content of which was already included in the infraction report narrative.

It cannot be argued that Wolff creates an absolute right of the prison disciplinary defendant to have the DOC produce all evidence against them in all formats that the DOC intends to base its decision on: confrontation and cross-examination are specifically identified as presenting potential "hazards to institutional interests." 418

7

U.S. at 567. Wolff makes clear instead that "[p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." Id. at 564 (citing In re Gault, 387 U.S. 1, 33-34, and n.54, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967)).

Bergman received notice of the alleged violation, was provided an opportunity to present evidence and call witnesses, and received a written summary of the evidence relied upon and the reasons for the disciplinary action. He fails to establish that his right to due process was violated.

Sufficiency of Evidence

Bergman also challenges the sufficiency of the evidence supporting his infraction for violating rule 603, "introducing or transferring any unauthorized drug or drug paraphernalia."

In a prison disciplinary setting, the "requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary [finder of fact] to revoke good time credits." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). Determining that this standard was satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." Johnston, 109 Wn.2d at 497 (quoting Hill, 472 U.S. at 455-56). "Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations." Hill, 472 U.S. at 455. Administrative law states that hearing officers "will consider the totality of the circumstances, the elements of the

8

charged violation(s), all pertinent and exculpatory evidence presented at the hearing" in reaching their decision.  WAC 137-28-310(1).

The hearing officer relied on staff incident reports which detailed incoming mail sent to Bergman that tested positive for Suboxone.  Prior to the mail room intercept, Bergman had asked someone on the phone to mail him cards that "you can cut open and seal it back up."  Six days later the mailroom intercepted greeting cards addressed to Bergman that were layered, glued together and contained strips and paper, including one that tested positive for Suboxone.  After the intercept, in another phone call between Bergman and someone at the same phone number, the unidentified person on the line asks if Bergman received the mail and Bergman instructs the person on the line to "be careful what you say on this thing."  This evidence provides a basis to support the hearing officer's conclusion that Bergman introduced unauthorized drug or drug paraphernalia.

Bergman contends that his monitored phone calls were "misconstrued as some 'conspiracy' to introduce or transfer unauthorized drugs."  He cites State v. Bobic for the assertion that the DOC must prove an actual "agreement" existed.  140 Wn.2d 250, 265, 996 P.2d 610 (2000).  Bobic was a criminal conspiracy case and not a prison discipline matter.  Id.  Bobic is inapposite.  Under the "some evidence" standard, DOC does not need to prove the essential elements of a criminal charge, it merely must show that there is "any evidence in the record that could support the conclusion reached." Hill, 472 U.S. at 455-56.

Bergman also argues that DOC relies on circumstantial evidence, and asks that we apply the State v. McGonigle standard.  144 Wash. 252, 258, 258 P. 16 (1927)

("[W]hen circumstantial evidence is relied upon entirely, the circumstances relied upon for conviction must be consistent with each other and inconsistent with innocence."). McGonigle is inapposite as it is unrelated to a prison disciplinary action and the application of its circumstantial evidence standard would be at odds with the "some evidence" requirement of Hill. 472 U.S. at 457 ("[D]ue process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing.").

In his initial petition, it appears Bergman raises an additional claim: "[DOC] conducted a disciplinary proceeding in which it failed to distinguish evidence." To the extent he means something other than the issues we have already addressed, it does not warrant review. A "[b]are allegation[ ] unsupported by citation of authority, references to the record, or persuasive reasoning cannot sustain" the required burden of proof. In re Pers. Restraint of Pheth, 20 Wn. App. 2d 326, 332, 502 P.3d 920 (2021) (first alteration in original) (citing State v. Brune, 45 Wn. App. 354, 363, 725 P.2d 454 (1986)).

We deny the petition.

_____
Coburn, J.

WE CONCUR:

_____
Birk, J.

_____
Hazelrigg, ACJ