[Nos. 19887-1-III; 20536-3-III. Division Three. August 22, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. ARDIS L. WILSON, *Appellant*.

*In the Matter of the Personal Restraint* ARDIS L. WILSON, *Petitioner*.

124

*Paul J. Wasson II*, for appellant/petitioner.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Andrew J. Metts III*, and *Matthew F. Duggan*, for respondent.

BROWN, C.J. — Ardis L. Wilson appeals his Spokane County convictions of second degree assault, first degree unlawful possession of a firearm, and gross misdemeanor reckless endangerment.[1] The convictions stemmed from a shooting incident at a December 31, 1999 New Year's Eve party at a Spokane residence in which an unintended victim was wounded by a stray bullet.

Mr. Wilson contends (1) his speedy trial rights were violated due to untimely arraignment, (2) the jury was improperly given a transferred intent instruction, (3) inconsistent verdicts require reversal of the assault and reckless endangerment convictions, (4) the court erred in denying his motion for arrest of judgment as untimely, and (5) the court improperly used purported California convictions to miscalculate his offender score. Mr. Wilson also raises numerous issues in a pro se brief and in a consolidated personal restraint petition. We affirm Mr. Wilson's convictions but remand for resentencing and grant his personal restraint petition to that extent.

---

[1] The judgment and sentence states Mr. Wilson was convicted of second degree reckless endangerment, RCW 9A.36.050. The statutory citation is correct, but there is only one degree of reckless endangerment.

## FACTS

Mr. Wilson was originally charged in district court with two counts of first degree assault on January 27, 2000, but for unknown reasons the warrant was not served on him until May 24. The superior court information was filed May 30, and he was arraigned on June 1. He did object to his arraignment as untimely, but did not pursue a hearing on the matter. After amendment of the information to add first degree burglary and unlawful possession of a firearm charges, the case ultimately proceeded to trial in October 2000.

The shooting victim, partygoer Tera Young, testified she was outside on the porch and heard an argument from inside about someone not paying to enter the party. A gunshot followed and she sustained a through-and-through bullet wound to the left breast and arm. She never saw who fired the shot. Before hitting her, the bullet traveled through a wooden pillar on the porch.

The home's resident, Adrienne Ellis, had permitted her sister Chandra and friends to have the party so long as front door bouncers frisked each entrant for weapons and collected a cover charge. Mr. Wilson arrived with three companions. According to Adrienne Ellis they were dressed in baggy clothes, but not frisked because they were friends with the doorman. Witnesses said these individuals acted suspiciously, but mainly kept to themselves at the party.

Soon, a new arrival at the party—John Doe[2]—refused to pay the cover charge. He approached Mr. Wilson's group and made gang slurs. Mr. Wilson began arguing with John Doe, who, according to eyewitnesses, including Mr. Wilson's own companion, Jerald Cavitt, did not act physically threatening. The room was full of people and John Doe was trying to avoid the confrontation. Mr. Wilson nevertheless pulled a gun from his back waist area and pointed it at John Doe's head. Witnesses heard John Doe telling Mr. Wilson it

---

[2] The man was never identified and was referred to as "John Doe" in the jury instructions. Hereinafter he is also referred to as John Doe.

was not that serious and the gun was not necessary. But Mr. Wilson kept pointing the gun at John Doe's head and telling him it was that serious. None of the prosecution witnesses saw John Doe threaten Mr. Wilson or anyone else, and none saw him with a gun. One witness, who did not specifically identify Mr. Wilson, said the man holding the gun told John Doe that he was going to kill him.

Mr. Cavitt testified for the State. He said it was Mr. Wilson who took the argument to the next level by pulling a gun on John Doe. John Doe tried to slap the pointed gun away from his head as Mr. Wilson told him to get outside. Mr. Cavitt tried to act as a peacemaker and told Mr. Wilson not to do it. Mr. Wilson then hit John Doe in the face with the gun and a shot fired. That stray bullet struck Ms. Young. It appeared to at least one witness, Joshua Fross, that the gun was not intentionally fired. Mr. Fross said something caused it to go off when the person swung it at John Doe.[3]

Defense witnesses gave a different version of the events. Lowell Egbert and Jewaun Nave both testified they attended the party with Mr. Cavitt and Mr. Wilson and all were patted down at the door. A young male (John Doe) subsequently tried to force his way into the party. He was drunk and flashing his gang sign and brandished a weapon from beneath his shirt. Mr. Nave initially got into a dispute with him, but Mr. Wilson intervened and wrestled the gun away. Mr. Wilson then hit John Doe on the side of the head with the gun and it went off.

Mr. Wilson similarly testified that he did not have a gun that evening and was frisked at the door. He intervened and wrestled the gun away because he thought John Doe was going to do something to Mr. Nave. They struggled for the gun and it went off as John Doe kept coming toward him. Mr. Wilson finally gained control of the gun after the gunshot and took it with him as he fled the scene.

---

[3] As an element of the unlawful possession of a firearm charge, the court advised the jury that the parties agreed Mr. Wilson had previously been convicted of a serious offense—conspiracy to deliver a controlled substance.

Detective Terry Boardman testified on rebuttal that she interviewed Mr. Egbert during the investigation and he was adamant that he never saw a gun at all.

The court gave a transferred intent instruction (11) pertaining to the charges of first degree assault and lesser-included second degree assault against the intended victim Mr. Doe and the unintended victim Ms. Young. The court also gave reckless endangerment instructions pertaining to both victims, as well as Mr. Wilson's proposed self-defense instructions.

On October 6, 2000, the jury convicted Mr. Wilson of second degree reckless endangerment on the count pertaining to John Doe and second degree assault with respect to Ms. Young, thus rejecting Mr. Wilson's self-defense or defense of another theory. The jury also convicted him of first degree unlawful possession of a firearm, and by special verdict found he was armed with a deadly weapon when committing the assault. The jury acquitted on the burglary count.

On January 5, 2001, Mr. Wilson filed a motion for arrest of judgment, arguing, among other things, that the reckless endangerment and second degree assault verdicts were inconsistent and must be set aside. The court denied the motion as untimely without considering the merits. The matter then proceeded to sentencing. The court used two challenged California drug convictions in the offender score and imposed a 90-month standard range sentence, including a 36-month weapons enhancement. The court entered the judgment and sentence on January 26, and this appeal followed.

## ANALYSIS

### A. Speedy Trial

Mr. Wilson contends his CrR 3.3 speedy trial rights were violated due to the State's lack of due diligence in timely arraigning him between the January 27, 2000 filing of

assault charges in district court and initial service of the arrest warrant on May 24 when he first appeared. He thus claims a constructive arraignment date should be set at February 10, 2000—14 days after filing of the district court complaint. *State v. Greenwood,* 120 Wn.2d 585, 845 P.2d 971 (1993); *State v. Peterson,* 90 Wn.2d 423, 427, 585 P.2d 66 (1978). Under his theory, the latest he could have been brought to trial under the 90-day, out-of-custody speedy trial rule was May 10, 2000, thus requiring dismissal of the charges with prejudice under CrR 3.3. We find no error.

CrR 3.3(c)(2)(i) requires the State to bring an out-of-custody defendant to trial not later than 90 days after the date of arraignment, less time elapsed in district court. Under CrR 3.3(c)(2)(i), a defendant must be arraigned within 14 days after the defendant's first appearance in court. But when lack of good faith and due diligence by the State results in a long and unnecessary delay in initially bringing the defendant before the court, the rule of *State v. Striker,* 87 Wn.2d 870, 875, 557 P.2d 847 (1976), applies to set a constructive arraignment date to start the speedy trial clock at 14 days after the information is filed. *See Greenwood,* 120 Wn.2d at 599; *Peterson,* 90 Wn.2d at 427. A defendant who is not promptly arraigned must raise this objection at the time of arraignment. *Greenwood,* 120 Wn.2d at 598.

Mr. Wilson did object to his arraignment as untimely, thus theoretically invoking scrutiny of the delay for purposes of setting a constructive arraignment date under *Striker* and *Greenwood.* But he never noted his motion for hearing as required by CrR 3.3(f). Thus, the court was not asked to consider whether the State failed to act in good faith or with due diligence in bringing him before the court. The State was not given a chance to proffer such evidence. Nor was Mr. Wilson's motion supported by any affidavit suggesting he was amenable to process after the district court complaint was filed. His claim is thus not reviewable, except that the record shows he was arraigned in superior court on June 1—eight days after his initial court appear-

ance. Since he was then in custody, a trial date within 60 days was set. *See* CrR 3.3(c)(2)(i). Further continuances are not challenged. On the record presented, Mr. Wilson's speedy trial rights were not violated.

## B. Transferred Intent Instruction

■■ The issue is whether the court erred in giving the jury transferred intent instruction 11, which provided, "A defendant's intent to assault an intended victim transfers to an unintended victim. An intent against one victim is an intent against all victims." Clerk's Papers at 129. Mr. Wilson did not object to the giving of this instruction. It is therefore the law of the case. *State v. Perez-Cervantes*, 141 Wn.2d 468, 476 n.1, 6 P.3d 1160 (2000). Moreover, transferred intent is applicable to second degree assault charges involving an accidental or unintended victim. *State v. Clinton*, 25 Wn. App. 400, 606 P.2d 1240 (1980).

## C. Inconsistent Verdicts

The issue is whether the guilty verdict for the second degree assault of Ms. Young should be vacated as inconsistent, under transferred intent principles, with the assault acquittal and reckless endangerment conviction pertaining to John Doe.

Mr. Wilson takes the position it was illogical and inconsistent for the jury to acquit on the second degree assault count with respect to the intended victim John Doe, yet still use a transferred intent theory to convict on the second degree assault count with respect to the unintended victim, Ms. Young. No intent can transfer from recklessness when the proof was the same for both counts. *State v. Allen*, 66 Wn.2d 641, 643, 404 P.2d 18 (1965); *State v. Fairfax*, 42 Wn.2d 777, 781, 258 P.2d 1212 (1953); *State v. Vahey*, 49 Wn. App. 767, 773-74, 746 P.2d 327 (1987); *State v. Culver*, 36 Wn. App. 524, 527, 675 P.2d 622 (1984).

The State responds that consistency between verdicts on several counts is unnecessary when a defendant is con-

victed on one count but acquitted on others. *State v. Wai-Chiu Ng*, 110 Wn.2d 32, 45-48, 750 P.2d 632 (1988). Furthermore, inconsistent verdicts do not provide a basis for relief when, as here, the probable basis was jury error or the exercise of mercy. *United States v. Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). Mr. Wilson got the benefit of the jury's leniency and should not be heard to complain. We agree with the State.

■ A threshold question is whether Mr. Wilson waived this issue by not raising it prior to the time the jury was discharged, and waiting to raise it in his motion for arrest of judgment filed three months later. *State v. McNeal*, 145 Wn.2d 352, 357, 37 P.3d 280 (2002). A manifest error affecting a constitutional right may be raised for the first time on appeal. RAP 2.5(a); *State v. Scott*, 110 Wn.2d 682, 686, 757 P.2d 492 (1988). In *McNeal*, the court explained that an appellant does not show manifest error merely by showing that verdicts appear to be inconsistent. *McNeal*, 145 Wn.2d at 357. Rather, it is the appellant's burden "to demonstrate that the alleged error actually affected his or her rights." *Id.* " '[I]t is this showing of *actual prejudice* that makes the error "manifest", allowing appellate review.' " *Id.* (quoting *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)). We determine Mr. Wilson has not made this showing.

■ In *Ng*, our court adopted the rule of *Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932), that consistency between verdicts on multiple counts is unnecessary when a defendant is convicted on one or more counts but acquitted on others, so long as sufficient evidence supports the guilty verdicts. *Ng*, 110 Wn.2d at 46-48. As noted in *Ng*, the *Dunn* rule was reaffirmed in *Powell*, where the court observed that inconsistent verdicts present error in the sense that the jury has not followed the court's instructions, but that a variety of factors including jury mistake, compromise or lenity can lead to an inconsistent verdict. *Powell*, 469 U.S. at 65. The *Powell* Court rejected as

"imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case[s] the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake."

*Ng*, 110 Wn.2d at 46 (quoting *Powell*, 469 U.S. at 66).

The *Ng* court determined that the *Dunn* rule expressly applies in instances of conviction for a lesser included offense rather than for the offense originally charged when the defendant argues that acquittal of the original crime was inconsistent with the conviction. *Id.* at 47. Thus, in *Ng* where the defendant was acquitted of 13 first degree felony murder charges, but nevertheless convicted of the 13 underlying felonies of first degree robbery, the court held that even though the verdicts were inconsistent, the convictions should be upheld because they were supported by sufficient evidence. *Id.* at 48. Considerations of jury lenity, and problems inherent in second-guessing the jury's reasoning, dictated application of the *Dunn* rule. *Id.*

*Ng* also specifically overruled the prevalent state court rule of *State v. O'Neil*, 24 Wn.2d 802, 167 P.2d 471 (1946), that when two offenses growing out of the same transaction are charged in separate counts and one offense includes elements necessary to the commission of the other, a verdict of acquittal on one is inconsistent with a verdict of guilty on the other and must be reversed. *Ng*, 110 Wn.2d at 46. Mr. Wilson's cited cases *Allen*, 66 Wn.2d 641; *Fairfax*, 42 Wn.2d 777; *Vahey*, 49 Wn. App. 767; and *Culver*, 36 Wn. App. 524, are all distinguishable because they are based on the *O'Neil* rule, not *Ng*.

Applying the *Ng* rule to the instant case, the guilty verdict of second degree assault via transferred intent for the unintended bystander victim Ms. Young is logically inconsistent with the second degree assault acquittal/reckless endangerment conviction for the intended victim John

Doe. But under the test of *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980), when the evidence is viewed most favorably to the State, it is sufficient to find Mr. Wilson guilty of both crimes.

First, the evidence established that Mr. Wilson, whom the jury determined was not acting in defense of self or others, brandished a handgun, pointed it at John Doe's head and said he was going to kill him. This conduct alone is assault with a deadly weapon under circumstances not amounting to first degree assault, and thus satisfies the elements of second degree assault. RCW 9A.36.021(1)(c). It was during this assault, i.e., when Mr. Wilson also hit John Doe in the head with the gun, that the gun discharged. Under unchallenged instruction 11, the requisite intent for second degree assault then transferred to the unintended gunshot victim, Ms. Young. Thus, the evidence was sufficient to convict for the second degree assault of Ms. Young.

The evidence also easily supports a conviction for reckless endangerment under the court's instructions.[4] Mr. Wilson's striking John Doe in the head with the gun and causing it to discharge created a substantial risk of death or serious physical injury to John Doe. RCW 9A.36.050(1).

We therefore reject Mr. Wilson's challenge to the inconsistent verdicts and do not further assess inconsistencies that are unexplained and/or produced by jury lenity, mistake, or nullification. Our holding finds additional support in *McNeal*, which strictly applied the *Ng/Dunn* rule to uphold logically inconsistent convictions. There the jury by general verdict implied that the defendant was operating a vehicle under the influence of drugs for purposes of a vehicular assault conviction, but at the same time by

---

[4] Instruction 17 defining reckless endangerment in the second degree, and the "to convict" instruction 18 for that offense, were both proposed by Mr. Wilson and are substantively consistent with both former and current RCW 9A.36.050(1) and with the current pattern reckless endangerment elements instruction. 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.33 (2d ed. 1994 & Supp. 1998). To convict for second degree reckless endangerment, instruction 18 required the jury to find that the defendant discharged a firearm and that such conduct created a substantial risk of death or serious physical injury to another person. The reckless endangerment instructions are unchallenged on appeal.

special verdict found the defendant was not under the influence of drugs for purposes of a vehicular homicide conviction arising out of the same facts.[5] *McNeal*, 145 Wn.2d at 356, 358-61.

■ Consequently, the inconsistency in verdicts is not a manifest error affecting a constitutional right. Mr. Wilson thus waived his right to challenge the verdicts by not raising the issue before the jury was discharged. *See McNeal*, 145 Wn.2d at 361-62.

## D. Motion for Arrest of Judgment

The issue is whether the court erred in refusing to substantively consider Mr. Wilson's motion for arrest of judgment filed three months after the verdict due to untimeliness. We find no error.

■ CrR 7.4(b) requires a motion for arrest of judgment to be served and filed within 10 days of the verdict, yet Mr. Wilson filed his motion nearly three months later. There is no indication in the record that Mr. Wilson moved for an extension as authorized by CrR 7.4(b). The court thus did not abuse its discretion in denying the CrR 7.4 motion as untimely. Mr. Wilson's cited case *State v. Thomas*, 128 Wn.2d 553, 555, 910 P.2d 475 (1996), is distinguishable because it involved denial of a motion for arrest of judgment that had already been entered. His other cited cases involving CrR 7.8 motions for relief from judgment are also inapposite because the judgment was yet to be entered when he filed his motion. *State v. Rowland*, 97 Wn. App. 301, 983 P.2d 696 (1999); *State v. Clark*, 75 Wn. App. 827, 880 P.2d 562 (1994).

---

[5] We note that other courts adopting the *Dunn* rule have rejected inconsistent verdicts arguments in the transferred intent context. *See Gray v. State*, 650 P.2d 880, 884 (Okla. Crim. App. 1982) (court did not err in accepting inconsistent verdicts of guilty of shooting with intent to kill for unintended transferred intent victim, but acquittal for intended victim); *State v. Hall*, 174 W. Va. 599, 602, 328 S.E.2d 206, 210 (1985) (verdicts not necessarily inconsistent under facts, but even if under transferred intent theory a verdict for second degree murder requiring malice was inconsistent with unlawful wounding verdict, *Dunn* rationale precluded claim of reversible error).

E. Counting of California Convictions in Criminal History

The issue is whether the court erred by including two purported 1992 and 1994 California drug convictions in Mr. Wilson's offender score. Relying on *In re Personal Restraint of Connick*, 144 Wn.2d 442, 28 P.3d 729 (2001), and *State v. Ford*, 137 Wn.2d 472, 973 P.2d 452 (1999), Mr. Wilson contends the State failed its threshold burden of producing authenticated documents to prove those convictions, thus entitling him to a remand for resentencing without including them in his offender score. We agree.

We review a sentencing court's calculation of an offender score de novo. *State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994). When a defendant's criminal history includes out-of-state convictions, the Sentencing Reform Act of 1981, chapter 9.94A RCW, requires those convictions to be classified "according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(3) (formerly RCW 9.94A.360(3) (1999)); *Ford*, 137 Wn.2d at 479. If the elements are comparable, use of a prior conviction in the offender score is constitutionally permissible only if the State carries its burden of proving the existence of the prior conviction by a preponderance of the evidence. *Ford*, 137 Wn.2d at 479-80; former RCW 9.94A.110 (2000); *see also State v. Ammons*, 105 Wn.2d 175, 186, 713 P.2d 719, 718 P.2d 796 (1986).

The State must provide reliable evidence establishing the accuracy of the offender score calculation. *Ford*, 137 Wn.2d at 482. Thus, the best evidence of a prior conviction is a certified copy of the judgment, although the State may also introduce other comparable documents of record or transcripts of prior proceedings to establish the defendant's criminal history. *Id.* at 480; *State v. Cabrera*, 73 Wn. App. 165, 168, 868 P.2d 179 (1994). Furthermore, in *Connick*, 144 Wn.2d at 455-58, the court emphasized that documents such as uncertified or unauthenticated photocopies of apparent or purported court records that do not meet the authentication test under ER 901 and 902, chapter 5.44

RCW, or CR 44 may not be relied on to establish a fact in dispute absent a stipulation or order of a court to accept the documents for what they purport to be.

The State may also satisfy its burden solely with authentic prior Washington judgments and sentences reflecting convictions from other jurisdictions, unless the defendant objects to the use of such documents. *Cabrera*, 73 Wn. App. at 168-69. When the defendant does object, the State is then required to produce additional evidence of both the classification and existence of the out-of-state convictions in order to carry its burden of proving convictions by a preponderance of the evidence. *Id*. at 169 (classification of convictions); *State v. Mitchell*, 81 Wn. App. 387, 390 n.2, 914 P.2d 771 (1996) (existence of convictions). Collateral estoppel does not apply against the defendant in this situation unless the State additionally proves that the defendant in fact knowingly, intelligently and voluntarily waived his right to object to use of the convictions in a prior proceeding. *Cabrera*, 73 Wn. App. at 169-70.

Here, in addition to the second degree assault and unlawful firearm possession felonies counting against each other, the State included in Mr. Wilson's offender score a 1996 Spokane County conviction for conspiracy to deliver a controlled substance, and 1992 and 1994 California convictions for possession of a controlled substance. This resulted in an offender score of 4 for each of the current felonies.

 The State did not produce at sentencing certified copies (or any copies) of the California judgments and sentences. To prove the 1994 California conviction, the State submitted (1) a faxed copy of the Los Angeles County felony complaint charging *Arron Darren Williams* with unlawful possession of cocaine base, (2) an apparently unauthenticated copy of the plea hearing transcript that is also not signed by the court reporter, and (3) apparently unauthenticated photocopies of court minute documents detailing the disposition of the case, including acceptance by the court of a guilty plea and an order of diversion for 12

months subject to Mr. Williams complying with certain conditions.

To prove the 1992 California conviction the State submitted (1) a faxed copy of the Los Angeles County information charging *Ardis Sullivan* with felony possession of a controlled substance—cocaine, and (2) an apparently unauthenticated copy of the plea hearing transcript in which Mr. Sullivan pleaded guilty to the charge.[6]

In addition, as proof of both California convictions the State submitted court documents from Mr. Wilson's 1995 Spokane County drug conviction in which he purportedly signed off on his criminal history to include the California convictions.

As now pertinent to our decision, Mr. Wilson objected to use of the California convictions on the grounds the documents did not meet authentication requirements under *Ford*, and the State was not entitled to the criminal history from the prior Spokane County judgment and sentence to collaterally estop him from challenging the California convictions.

The trial court first ruled the California offenses were comparable to Washington drug offenses and then stated:

> I'm also going to find that the State has proven by a preponderance that these California convictions do exist. I think between the transcript that I have, the [docket] notes, the Informations, and the prior conviction, I have got to put all that together, considering all that, I will go ahead and accept that, as well.

Report of Proceedings at 499.

Mr. Wilson objected to use of the 1995 Spokane County judgment document and the State made no attempt at the sentencing hearing to prove that he had knowingly and voluntarily waived the right to object in the prior proceed-

[6] At sentencing, Mr. Wilson did not concede he was the Arron Williams and Ardis Sullivan named in the California documents. He now admits at page 21 of his personal restraint petition that he is the person named in those documents. But he still maintains the convictions are unproven.

ing. On the record presented, the court erred to the extent it used documents from the 1995 Spokane County case for criminal history purposes. *Cabrera*, 73 Wn. App. at 169-70. The State has not submitted any pertinent documents on appeal to show otherwise.

The question then is whether the State has nevertheless met its burden of proof as required by *Connick* and *Ford*. On the record available to this court, the State has failed to show that the trial court was presented with anything other than uncertified/unauthenticated copies and faxes—not sufficient materials to meet its burden. When the State fails to carry its burden of proof after a specific objection, it is not provided a further opportunity to do so on remand. *State v. McCorkle*, 137 Wn.2d 490, 497, 973 P.2d 461 (1999).

Mr. Wilson's convictions are all affirmed, but the matter is remanded for resentencing with an offender score of 2 for the first degree unlawful possession of a firearm and second degree assault convictions. The personal restraint petition is granted only to the extent of the remand for resentencing and is otherwise denied.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder, having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SWEENEY, J., concurs.

KURTZ, J. (concurring in part and dissenting in part) — I agree with the majority opinion in all respects except for its resolution of the inconsistent verdicts issue. In my view, when the jury acquitted Mr. Wilson of assaulting his intended victim, it could not logically or legally convict him of assaulting the unintended victim. Absent intent to assault John Doe, no transferred intent existed to support an assault conviction as to Ms. Young. Therefore, I respectfully dissent.

In support of its analysis, the majority relies upon the sufficiency of the evidence rationale stated in $Ng$[7] and the policy reasons for not exploring jury verdicts expressed in *Powell*.[8] Neither *Ng* nor *Powell* deal with the problem of inconsistent verdicts involving transferred intent. As the *McNeal*[9] dissent points out, the long-standing *Dunn*[10] rule, upon which *Powell* and *Ng* are based, applies to inconsistencies between convictions and acquittals, not to inconsistencies between two or more convictions. All of those cases involved conviction-acquittal situations in which the guilty verdicts were supported by sufficient evidence. *See McNeal*, 145 Wn.2d at 364-65 (Sanders, J., dissenting).

As the *McNeal* dissent further explains, *Powell* expressly left open the issue of how to logically address inconsistent guilty verdicts:

> "Nothing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other."

*McNeal*, 145 Wn.2d at 368 (quoting *Powell*, 469 U.S. at 69 n.8). In this regard, *Powell* further cites *United States v. Daigle*, 149 F. Supp. 409 (D.D.C.), *aff'd*, 248 F.2d 608 (D.C. Cir. 1957), which recognizes that rational consistency is not necessary in the conviction-acquittal context under the *Dunn* rule, but "[o]n the other hand, where a guilty verdict on one count negatives some fact essential to a finding of guilty on a second count, two guilty verdicts may not stand." *Daigle*, 149 F. Supp. at 414.

I find the *Daigle* reasoning pertinent here, i.e., the jury's rejection of intent and finding of only recklessness for the intended victim John Doe should negate any transfer of intent and therefore, in these peculiar circumstances, pre-

---

[7] *State v. Wai-Chiu Ng*, 110 Wn.2d 32, 750 P.2d 632 (1988).

[8] *United States v. Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984).

[9] *State v. McNeal*, 145 Wn.2d 352, 37 P.3d 280 (2002).

[10] *Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932).

clude the greater assault conviction for the unintended victim, Ms. Young. It simply defies logic to uphold this conviction whereby a greater crime flows from a lesser one. There is no principled way to get from here (reckless) to there (intent). Judicial deference to a jury's authority to resolve facts any way they want to is one thing. But countenancing a criminal conviction when a constitutionally-required element of that crime is clearly absent is quite another.

The majority opinion in *McNeal* does apply the *Ng/Dunn* rule in the context of two inconsistent convictions, but again, *McNeal* and the cases upon which it relies did not involve the transferred intent situation presented here. The out-of-state cases cited by the majority were either conviction-acquittal cases or did not involve necessarily inconsistent verdicts. *Gray v. State*, 650 P.2d 880, 884 (Okla. Crim. App. 1982) (defendant found guilty of shooting with intent to kill for unintended transferred intent victim, but acquittal for intended victim); *State v. Hall*, 174 W. Va. 599, 602, 328 S.E.2d 206, 210 (1985) (verdicts not necessarily inconsistent under facts).

Mr. Wilson's case is one of conviction-acquittal in the sense that he was acquitted of assaulting John Doe. But it is still a conviction-conviction case because the jury convicted him of reckless endangerment. Thus, in this perhaps unique hybrid conviction-acquittal/conviction situation, the jury must have rendered these logically inconsistent verdicts through compromise, lenity, or mistake—admittedly not typically subject to scrutiny on review. But it is these very dynamics that compel me to conclude the jury's finding of no intent with regard to John Doe produced logically and legally inconsistent verdicts in trade for Mr. Wilson's fundamental due process right to proof by the State beyond a reasonable doubt as to each element of second degree assault. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983). In so doing, it is apparent that the jury did not follow the court's instructions that assault requires transferable intent. I would hold this to be reversible error.

The State has argued that Mr. Wilson invited this problem by proposing lesser-included instructions and by not objecting to the transferred intent instruction. The State further posits that Mr. Wilson got the benefit of the jury's leniency and should not be allowed to object now. I agree on the latter point insofar as Mr. Wilson proposed a reckless endangerment instruction with regard to John Doe and then gained conviction on that lesser offense. But there is, of course, no instruction allowing intent to transfer from recklessness. Mr. Wilson can hardly be said to have invited such a scenario, particularly when his clear primary theory of the case was defense of self or another.

In light of the missing intent element, I would reverse the second degree assault conviction and attendant firearm enhancement.

Reconsideration denied September 23, 2002.

Review denied at 149 Wn.2d 1006 (2003).