FILED
COURT OF APPEALS
DIVISION II

STATE OF WASHINGTON

BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44837-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| TIMOTHY R. RESTORFF, | |
| Appellant. | |

BJORGEN, A.C.J. — A jury returned a verdict finding Timothy Restorff guilty of second degree assault, with a special verdict finding that he committed his offense while armed with a deadly weapon. Restorff appeals his conviction and sentence, asserting that the trial court (1) violated his right to counsel by failing to adequately inquire about his complaints regarding counsel's performance and (2) miscalculated his offender score by including in its calculation offenses that had washed out and an Oregon offense that was not comparable to a Washington offense. Additionally, in his statement of additional grounds for review (SAG), Restorff raises issues that are not properly before us because the issues either refer to matters outside the trial record or require us to reweigh the evidence and evaluate the credibility of witnesses. Because the trial court did not violate Restorff's right to counsel and because his SAG arguments are not properly before us in a direct appeal, we affirm Restorff's conviction. However, because the sentencing court erred in finding that Restorff's Oregon conviction of first degree sexual abuse

was factually comparable to the Washington crime of first degree child molestation, we remand for correction of Restorff's offender score and for resentencing.[1]

## FACTS

On January 7, 2013, David Robinson was pumping gas into his car at a Kelso gas station when Restorff pulled his truck into the station and parked closely behind Robinson's car. Robinson asked Restorff to back his truck up so that he could exit the station. Restorff backed his truck up and then started insulting Robinson. After the two men began arguing, Restorff grabbed a knife from his dashboard and exited his truck. Robinson backed away when he saw Restorff approach him with the knife. Restorff kicked and jabbed his knife at Robinson. Robinson put his hand up to block Restorff and sustained multiple stab wounds to his hand. When Robinson attempted to call 911 on his cell phone, Restorff knocked the phone out of his hand and stomped on it. After a witness to the incident approached Restorff and said something to him, he returned to his truck. Based on this incident, the State charged Restorff with second degree assault and alleged that Restorff committed the offense while armed with a deadly weapon.

At a February 12 status hearing, defense counsel requested to continue the omnibus hearing for one week so that he could discuss a new plea offer with Restorff. Restorff interjected that he had already discussed the matter with defense counsel and had told counsel that he did not want to accept the plea offer. Restorff also told the trial court that he believed his counsel was not acting in his best interest because counsel (1) was unable to tell him whether his previous Oregon conviction of first degree sexual abuse would be comparable to a Washington

---

[1] Because we remand for resentencing, we do not address whether the sentencing court erred by including in its offender score calculations convictions Restorff argues had washed out.

strike offense under the Persistent Offender Accountability Act (POAA) and (2) could not obtain security camera footage that Restorff claimed would prove that he was acting in self-defense when he stabbed Robinson. The trial court acknowledged Restorff's concerns and continued the omnibus hearing for one week to allow Restorff time to try to resolve his issues with defense counsel, stating:

> So it sounds like you had desires that more information be found out about prior convictions and whether they qualify as strike offenses and the like and a little more time to talk about the plea offers. So maybe it might not be a bad idea to set this matter over a week so you could take a look at that. So that's what I'll do. I'll set the matter over to February 19th at 9 o'clock in the morning and we can address those issues at that time. If you have other concerns, you can address those concerns at that time also.

Verbatim Report of Proceedings (VRP) at 3. After the trial court announced its ruling, Restorff stated, "I'm not going to talk to this man. . . . I have nothing further to say to him." RP at 3-4.

The following week at the omnibus hearing, Restorff again expressed dissatisfaction with defense counsel, and the following exchange took place:

> [Restorff]: I've been trying to fire my attorney.
> [Trial court]: Why is that?
> [Restorff]: Misleading. In the beginning, he told me I was facing three strikes. And he tells me he's going to get the videos—security videos from Safeway and it's been two months now, going on, and he telling me there ain't no videos to be had.
> . . . .
> [Trial court]: Well, so, what's—what's misleading about that?
> [Restorff]: Well—and then he's writing me and telling me there is no strikes, and then he's telling me he can't tell if there's a strike from Oregon, and he can't—you know, how do I go and make a decision when I'm getting conflicting information? The first plea bargain I got was 17 to 22. You know—
> [Trial court]: Okay, then. And it sounds—
> [Restorff]: —all I—
> [Trial court]: —like you didn't take that, so now you're in a different position, right?
> [Restorff]: How can I tell you when I don't know what I'm—I'm looking at?

3

RP at 6-7. The trial court asked the State and defense counsel whether Restorff was facing a third strike. The State told the trial court it was possible that Restorff's previous Oregon conviction could be categorized as a strike offense but that it would require "pretty extensive legal research for either party to know for certain." RP at 7-8. Defense counsel told the trial court he had advised Restorff that his Oregon conviction could count as a strike offense, but that he could not tell for certain whether the offense would be comparable to a Washington strike offense because he had "not yet seen anything in the way of court paperwork from Oregon that would indicate what the status is." RP at 8. Regarding the security video footage, defense counsel told the trial court that his investigator had sought out the video footage that Restorff requested, but that the video footage did not exist. The trial court declined Restorff's request to dismiss counsel, stating:

> Okay. So, Mr. Restorff, it sounds like what's going on is just that things aren't breaking the way you want them to. Your attorney's got an investigator looking for the video that you said exists. It doesn't. They haven't got the paperwork from Oregon to make a good decision on whether or not this is a three-strike case or not. The fact that he can't give you pat answers is not a reason for me to excuse him, and it's certainly not a reason to consider his performance less than stellar. So it sounds to me like you better be making up your mind to talk to [defense counsel] because he's the only one working on your behalf right now.

RP at 10.

At the start of his jury trial, the trial court informed Restorff about his CrR 3.5 hearing rights. Restorff told the trial court that he had discussed the matter with defense counsel and that he was "putting [his] trust in him, I guess." RP at 14. At the conclusion of his trial, the jury returned a verdict finding Restorff guilty of second degree assault and returned a special verdict finding Restorff was armed with a deadly weapon when he committed his offense.

At sentencing, Restorff agreed with the prosecutor's statement of his criminal history, that his offender score would include one point for each of his previous burglary convictions, and

that only his previous third degree assault conviction had washed out. Restorff also agreed that he had pled no contest to the Oregon offense of first degree sexual abuse, but stated that he would not stipulate that his Oregon offense was comparable to a Washington strike offense. After the trial court confirmed with defense counsel that the remaining issue for sentencing was only whether Restorff's Oregon offense was comparable to the Washington crime of first degree child molestation, it continued the sentencing hearing to provide the parties with time to brief the matter. At the continued sentencing hearing, the trial court stated that it had reviewed the State's sentencing memorandum, and it then heard the State's argument regarding the comparability of Restorff's Oregon conviction of first degree sexual abuse to the Washington offense of first degree child molestation. Defense counsel declined to present any counter-argument, stating only that Restorff would not stipulate to comparability of the offenses.

The trial court noted that the Oregon offense of first degree sexual abuse was broader than the Washington offense of first degree child molestation because first degree child molestation contained two essential elements that first degree sexual abuse did not, (1) that the perpetrator was not married to the victim, and (2) that the perpetrator was at least 36 months older than the victim. The trial court found that the offenses were comparable based on information contained within Restorff's Oregon indictment that showed that Restorff was at least 36 months older than his sexual abuse victim and that he was not married to the victim when he committed the offense. The trial court thus included Restorff's Oregon conviction when calculating his offender score at six, and it sentenced Restorff within the standard range based on that offender score and the addition of his deadly weapon sentence enhancement. Restorff appeals his conviction and sentence.

## ANALYSIS

### I. RIGHT TO COUNSEL

Restorff first contends that the trial court violated his right to counsel when it refused to appoint new defense counsel without adequately inquiring into Restorff's conflict with his appointed counsel. We disagree.

Indigent criminal defendants have a constitutional right to assistance of counsel at public expense during all critical stages of the criminal proceedings. *State v. Devlin*, 164 Wn. App. 516, 525, 267 P.3d 369 (2011). The constitutional right to assistance of counsel at public expense does not, however, provide a criminal defendant with an absolute right to choose any particular advocate. *State v. Stenson*, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997).

> A criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. Attorney-client conflicts justify the grant of a substitution motion only when counsel and defendant are so at odds as to prevent presentation of an adequate defense. The general loss of confidence or trust alone is not sufficient to substitute new counsel.

*Stenson*, 132 Wn.2d at 734 (citations omitted).

A trial court has discretion to determine whether "an indigent defendant's dissatisfaction with his court-appointed counsel is meritorious and justifies the appointment of new counsel." *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991). We thus review a trial court's denial of a motion to substitute counsel for an abuse of discretion. *Stenson*, 132 Wn.2d at 733.

In this review, we consider three factors: (1) the nature and extent of the alleged conflict, including "the extent and nature of the breakdown in communication between attorney and client and the breakdown's effect on the representation the client actually receives"; (2) the adequacy of the court's inquiry; and (3) the timeliness of the motion and the effect of any substitution on

6

the scheduled proceedings. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 724, 16 P.3d 1 (2001). Restorff challenges only the second factor, asserting that the trial court abused its discretion by denying his substitution motion without conducting an adequate inquiry into his issues with defense counsel. "An adequate inquiry must include a full airing of the concerns . . . and a meaningful inquiry by the trial court." *State v. Cross*, 156 Wn.2d 580, 610, 132 P.3d 80 (2006).

Restorff initially expressed dissatisfaction with his defense counsel at a February 12, 2013 status hearing. Specifically, Restorff stated that defense counsel was not working in his best interest because counsel could not advise him whether his prior Oregon offense would be considered a strike offense under the POAA and could not obtain certain video evidence. The trial court acknowledged Restorff's concerns and set the omnibus hearing over for one week to allow Restorff and defense counsel time to try to resolve their differences. The following week, Restorff again raised the same two concerns with his defense counsel. The trial court addressed each of Restorff's concerns. Regarding Restorff's concern about defense counsel's inability to determine the comparability of his prior Oregon offense, the trial court noted that defense counsel had not yet received the necessary paperwork to make a comparability determination. On his concern about counsel's inability to secure the video footage he had requested, the trial court noted that counsel's investigator had found that the footage did not exist. Restorff did not again assert, as he did at the February 12 status hearing, that he would refuse to communicate with his defense counsel, and he did not again raise any concerns with his counsel's representation throughout the trial. The trial court's inquiry into Restorff's complaints allowed Restorff to fully apprise it of all his concerns with defense counsel's representation.

7

Further, the trial court addressed each of the two concerns raised by Restorff, questioned the State and defense counsel about those concerns, determined that Restorff's concerns were unfounded, and denied his motion to substitute counsel. Accordingly, the record shows that the trial court conducted an adequate inquiry into Restorff's concerns with his appointed counsel. *Cross*, 156 Wn.2d at 610. In addition, the record does not demonstrate that Restorff had an irreconcilable conflict or complete breakdown in communication with his defense counsel to justify the grant of his substitution motion. The record shows that, by the start of trial, Restorff and his defense counsel had worked out their differences and were actively communicating with each other. At best, Restorff's stated concerns showed his general loss of confidence in defense counsel, which alone is insufficient to warrant the substitution of counsel. *Stenson*, 132 Wn.2d at 734. For these reasons, the trial court did not abuse its discretion by denying Restorff's substitution motion.

## II. OFFENDER SCORE CALCULATION

Next, Restorff asserts that the trial court erred at sentencing by including in its offender score calculation (1) an Oregon conviction for first degree sexual abuse that the trial court found comparable to the Washington offense of first degree child molestation and (2) convictions that Restorff contends had washed out. We agree that the trial court erred by finding Restorff's Oregon conviction of first degree sexual abuse comparable to the Washington offense of first degree child molestation and, thus, remand for resentencing.

A defendant may challenge an offender score calculation for the first time on appeal. *State v. Arndt*, 179 Wn. App. 373, 388 n.9, 320 P.3d 104 (2014). We review de novo a trial court's calculation of a defendant's offender score. *State v. Wilson*, 113 Wn. App. 122, 136, 52 P.3d 545 (2002). At sentencing, the State bears the burden of proving by a preponderance of the

evidence the existence of the defendant's prior convictions. *State v. Ammons*, 105 Wn.2d 175, 186, 713 P.2d 719 (1986). The State does not meet this burden with "[b]are assertions, unsupported by evidence." *State v. Hunley*, 175 Wn.2d 901, 910, 287 P.3d 584 (2012). However, a trial court may rely on a defendant's stipulation or acknowledgement of prior convictions without further proof. *State v. Roy*, 147 Wn. App. 309, 316, 195 P.3d 967 (2008). A "defendant's mere failure to object to State assertions of criminal history at sentencing does not result in an acknowledgment," rather, "[t]here must be some *affirmative* acknowledgment of the facts and information alleged at sentencing in order to relieve the State of its evidentiary obligations." *Hunley*, 175 Wn.2d at 912

Restorff contends that the State failed to prove that his prior Oregon offense of first degree sexual abuse was comparable to the Washington crime of first degree child molestation and, therefore, the trial court erred by including that offense in its offender score calculation. Following our recent decision in *Arndt*, 179 Wn. App. 373, we agree and remand for resentencing consistent with this opinion.

We review de novo a trial court's classification of out-of-state crimes. *State v. Labarbera*, 128 Wn. App. 343, 348, 115 P.3d 1038 (2005). "When prior out-of-state convictions are used to increase an offender score, the State must prove the conviction would be a [comparable] felony under Washington law." *Labarbera*, 128 Wn. App. at 348; Former RCW 9.94A.525(3) (2011). An out-of-state conviction may not be used to increase the defendant's offender score unless the State proves it is equivalent to a felony in Washington. *State v. Weiand*, 66 Wn. App. 29, 31-32, 831 P.2d 749 (1992).

A foreign conviction is equivalent to a Washington offense if there is either legal or factual comparability. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255-58, 111 P.3d 837

9

(2005). A foreign offense is legally comparable if "the elements of the foreign offense are substantially similar to the elements of the Washington offense." *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007). If the elements of the two statutes are not identical or if the foreign statute is broader than the Washington definition of the particular crime, the trial court must then determine whether the offense is factually comparable. *State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998).

A conviction is factually comparable where the defendant's conduct would have violated a comparable Washington statute. *Lavery*, 154 Wn.2d at 255. The State bears the burden of providing sufficient evidence to prove the comparability of prior out-of-state convictions by a preponderance of the evidence. *State v. Ross*, 152 Wn.2d 220, 230, 95 P.3d 1225 (2004). "In making its factual comparison, the sentencing court may rely on facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt." *Thiefault*, 160 Wn.2d at 415.

Restorff pled no contest[2] to first degree sexual abuse in Oregon under former ORS 163.425 (1983). Former ORS 163.425 provided in relevant part:

> A person commits the crime of sexual abuse in the first degree when that person:
> (a) Subjects another person to sexual contact; and
> (A) The victim is less than 12 years of age.

When Restorff committed his first degree sexual abuse offense in Oregon, the Washington crime of first degree child molestation was defined in relevant part as follows:

> A person is guilty of child molestation in the first degree when the person has sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

---

[2] A no contest guilty plea in Oregon is similar to an *Alford* guilty plea in Washington. *Compare* OREGON REVISED STATUTES 135.335, 135.395 *with In re Pers. Restraint of Cross*, 178 Wn.2d 519, 525-28, 309 P.3d 1186 (2013), *petition for cert. filed* December 17, 2014 (discussing requirements for entering an *Alford* plea in Washington) (citing *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)).

Former RCW 9A.44.083 (1990).

The trial court correctly determined that Washington's crime of first degree child molestation contained two essential elements that the Oregon crime of first degree sexual abuse did not: (1) that the victim was not married to the perpetrator and (2) that the perpetrator was at least 36 months older than the victim. Therefore, the trial court was required to find the crimes factually comparable before it could include the Oregon offense in its offender score calculation. *Morley*, 134 Wn.2d at 606.

In finding that Restorff was at least 36 months older than the victim when committing his Oregon offense of first degree sexual abuse, the trial court relied on Restorff's criminal indictment, which contained a heading listing his date of birth as June 10, 1961. Restorff argues that the trial court's reliance on the printed date of his birth in the heading of his indictment violated his jury trial right under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because he did not admit to having that date of birth and because a jury did not find beyond a reasonable doubt that it was his date of birth. Assuming that Restorff is correct in this contention, his no-contest plea agreement nonetheless provided a sufficient admission from which the trial court could find that he was at least 36 months older than the victim when he committed his offense.

In his no-contest plea agreement, Restorff admitted that he was "30 years of age" when submitting his plea on April 15, 1992. Ex. 1, at 2. Accordingly, Restorff's admission showed that he was at least 36 months older than the victim, who was under 12 years old at the time of the offense, when he committed first degree sexual abuse on or between June 13, 1991 and July 2, 1991.

Turning to the question of marital status, Restorff is correct that nothing in the plea documents show his admission to being unmarried to the victim when he committed his offense. The State argues that, because the minimum age at which a person may marry in Oregon is 17 years old, Restorff could not have been married to his victim when he committed his offense as a matter of law. We rejected a similar claim in *Arndt*, where we held that the State failed to prove the factual comparability between the defendant's Oregon crime of third degree rape and the Washington crime of third degree child rape. *Arndt*, 179 Wn. App. at 388. In so holding, we rejected the State's argument that the trial court could infer that the defendant and the third degree rape victim were unmarried because the victim was below the minimum age of marriage in Oregon. In rejecting this argument, we recognized that it was not impossible for the defendant and the victim to have been married outside of Oregon, stating:

> The State's arguments do not show that it was impossible for Arndt and the victim to have been married. . . . [I]n California there is no minimum age for marriage with a court order and written parental consent, Cal. Fam. Code 302, while in Washington, a superior court judge may waive the age requirements on a showing of necessity. RCW 26.04.010(2).

*Arndt*, 179 Wn. App. at 389, n.10.

As in *Arndt*, the State here did not present any evidence about Restorff's and the victim's marital status, an element of Washington's crime of first degree child molestation. As in *Arndt*, the fact that the victim was below the minimum age of marriage in Oregon does not prove that Restorff and the victim were unmarried at the time of the Oregon offense. Accordingly, the trial court erred by including that conviction in its calculation of Restorff's offender score, and we

remand for resentencing.[3] Because the sentencing court must recalculate Restorff's offender score when resentencing him on remand, and because Restorff will not be bound by his prior offender score agreement,[4] we do not address his claim that the sentencing court erred by including prior offenses in its offender score calculation that Restorff contends had washed out.

## II. SAG

In his SAG, Restorff first appears to argue that his counsel was ineffective for failing to (1) obtain certain video evidence, (2) hire an investigator, (3) request a bail reduction hearing, and (4) spend any time preparing a defense. All of these arguments refer to matters that are outside the record on appeal. Accordingly, we cannot address these arguments in Restorff's direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

Restorff also argues in his SAG that Robinson attacked him at the gas station and, thus, he acted in self-defense when he stabbed Robinson. The nature of this argument is unclear, but it appears that Restorff is asking our court to reevaluate the persuasiveness of evidence and the credibility of his testimony in support of his self-defense claim. However, we defer to the jury on issues of witness credibility and the persuasiveness of evidence. *State v. Snider*, 70 Wn.2d 326, 327, 422 P.2d 816 (1967). Accordingly, we do not further address this argument.

---

[3] Whether the State may have another opportunity to introduce evidence to show the factual comparability of Restorff's Oregon offense to a Washington crime or whether it must rely on the record established at the prior sentencing hearing is controlled by RCW 9.94A.530(2). *See State v. Jones*, ___ Wn.2d ___, 338 P.3d 278 (2014).

[4] *See State v. Reinhart*, 77 Wn. App. 454, 458-59, 891 P.2d 735 (1995) (interpreting former RCW 9.94A.360(6)(a), *recodified as* RCW 9.94A.525(5)(a)(1)) to require "current sentencing court" to determine whether defendant's multiple prior offenses encompassed the same criminal conduct).

No. 44857-2-II

We affirm Restorff's conviction, but remand for correction of his offender score and for resentencing consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

<span style="float:right;">BJORGEN, A.C.J.</span>

We concur:

WORSWICK, J.

MELNICK, J.